**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| In re:<br><br>MICHAEL A. VASQUEZ, a/k/a Tony Vasquez,<br><br>Debtor. | Case No. F04-01324-DMD<br>Chapter 13<br><br>**Filed On 4/29/05** |

**MEMORANDUM ON OBJECTION TO CLAIM**
**[Alaska USA Federal Credit Union - Claims Nos. 1 & 16]**

A hearing was held on April 25, 2005, on the debtor's objection to Claim No. 1, filed by Alaska USA Federal Credit Union and on confirmation of the debtor's chapter 13 plan. Although the trustee has recommended confirmation of the debtor's plan, the feasibility of the plan can't be determined until the amount of Alaska USA's secured claim has been established. The value of the vehicle, and the scope of the secured claim, are contested.

Background

The debtor, Michael A. Vasquez, purchased a 1999 Chevy Tahoe from Lithia Chrysler/Jeep of Anchorage on May 8, 2004. The vehicle had 50,237 miles on it at the time of purchase, and it sold for $19,694.00. The debtor made a $1,000.00 down payment and Alaska USA Federal Credit Union financed the rest. It loaned the debtor the sum of $21,989.95, which amount included the balance of the vehicle purchase price ($18,694.00), and a 36 month/36,000 mile extended service contract ($2,580.00).

Vasquez filed a chapter 13 petition on December 2, 2004. Alaska USA filed Claim No. 1 as a secured claim for $21,306.22. It filed an amended claim, No. 16, which asserted the same secured claim but also asserted a priority claim of $3,923.00 for CPI

insurance. The debtor filed an objection to Alaska USA's claim, contesting the amount of the secured claim.[1] He obtained an appraisal from Frank Martin of Variety Motors in Fairbanks on April 6, 2005, which placed the retail value of the vehicle at between $13,995.00 and $14,600.00. The Tahoe had 66,731 miles on it at the time of the appraisal. At the time of the claim objection hearing, on April 25, 2005, the debtor testified that there were 67,800 or 67,900 miles on the vehicle.

Alaska USA contends the vehicle's value should be determined as of the date the petition was filed in December, 2004, and that the value of the Tahoe at that time was between $19,068.00 and $16,343.00. Alaska USA also says the extended service warranty and the cost of CPI insurance it obtained on the vehicle, to cover a period of time when the debtor's vehicle insurance had lapsed ($1,032.00), should be included in the secured claim.[2]

Mr. Martin testified by telephone at the hearing on objection to claim. He has been in the car business for about 12 years and has done several vehicle appraisals. He said that, in appraising the debtor's Tahoe, he didn't add any value to the vehicle on account of the extended service warranty. He said that these warranties aren't typically included in the appraisal because they can be cancelled by the seller and it's difficult to place a value on them. He also testified that he didn't recall seeing running boards, a towing/camper package, or a Z71 off-road package on the vehicle when he appraised it. The debtor also testified that these accessories were not included on the vehicle. Alaska USA contends these accessories were on the vehicle at the time of purchase.

---

[1] *See* Notice of Obj. to Claim and Notice of Hrg. Thereon, filed Mar. 23. 2005 [Docket No. 30].

[2] The portion of Alaska USA's claim attributable to the CPI insurance was reduced to this amount at the hearing on objection to its claim, to account for a premium refund Alaska USA received after the debtor reinstated his own insurance for the vehicle.

Discussion

The value of the vehicle should be determined as of the date of plan confirmation.[3] Value is determined under 11 U.S.C. § 506(a), which provides:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.[4]

In a chapter 13 "cram down," the value of the vehicle "is the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller."[5] A debtor's proposed disposition or use of a creditor's collateral "is of paramount importance to the valuation question."[6]

Here, the debtor proposes to retain the vehicle, with the extended warranty intact, for his personal use during the pendency of his chapter 13 plan. Additionally, the sales contract the debtor entered with Alaska USA granted the credit union a security interest in both the vehicle and the premiums paid for the service contract. Under these

---

[3] 11 U.S.C. § 1325(a)(5)(B)(ii).

[4] 11 U.S.C. § 506(a).

[5] *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 960 (1997).

[6] *Id.* at 962.

3

circumstances, I find that the extended service warranty has value and should be included in the secured portion of Alaska USA's claim.[7]

I find the appraisal for the Tahoe given on April 6, 2005, by Mr. Martin to be reasonable and will adopt his higher retail value, $14,600.00, for the vehicle. No additional value will be given for running boards, a towing/camper package, or a Z71 off-road package, since both the debtor and Mr. Martin testified that these accessories were not on the vehicle. Nor will the CPI insurance premium paid by Alaska USA be included in the secured portion of its claim. Value will, however, be given for the extended warranty in the sum of $1,321.32.[8] Adding this sum to the retail value of the vehicle gives Alaska USA a secured claim in the amount of $15,921.32. Alaska USA will be paid this amount, plus interest at the rate of 8.49%, over the remaining 56 month term of the plan. The monthly payment to be made to Alaska USA by the trustee on this claim will be $345.33.

Alaska USA will be allowed a general unsecured claim in the sum of $6,416.90.[9] Alaska USA was awarded adequate protection, in the form of a lien against the plan payments received by the trustee, in the amount of $392.00 per month from January 20,

---

[7] Other courts have also found, in the chapter 13 context, that extended warranties or service agreements should be included in the valuation of a secured creditor's interest in a vehicle. *See*, *e.g., In re Bivens*, 317 B.R. 755, 761-62 (Bankr. N.D. Ill. 2004); *In re Ruiz*, 227 B.R. 264, 266-67 (Bankr. W.D. Tex. 1998); *In re Franklin*, 213 B.R. 781, 783 (Bankr. N.D. Fla. 1997).

[8] The service contract extended coverage for 36,000 miles, or until the Tahoe reached 86,237 miles. Assuming the Tahoe currently has 67,800 miles on it, there are 18,437 miles remaining on the service contract. Total cost of the service contract ($2,580.00) divided by 36,000 miles = 0.07166666666. Multiplying this fraction by the remaining miles left on the service contract equals $1,321.32.

[9] This is the amount of AK USA's Claim No. 1 ($21,306.22), plus the CPI insurance ($1,032.00), less the amount of its secured claim ($15,921.32).

4

2005.[10]  The total amount of the adequate protection payments held by the trustee, as of the date of this memorandum, is $1,568.00.  The trustee will pay this amount to Alaska USA at this time, and this sum will be credited against Alaska USA's general unsecured claim.  The balance of its unsecured claim, $4,848.90, will share in the pro-rata distribution to be made to general unsecured claims under the terms of the debtor's plan.

        Alaska USA's objection to confirmation of the debtor's chapter 13 plan will be overruled.  The objection filed by creditor Karl Woodruff will also be overruled.  Mr. Woodruff objected to confirmation of the debtor's chapter 13 plan on the grounds that his claim was not provided for under the plan.  His claim, in the amount of $3,036.06, is ambiguous on its face because both the "priority" and "general unsecured" boxes have been checked.  The claim is based on a promissory note that has been reduced to judgment, and the debtor has filed an objection to the claim, asking that it be allowed as a general unsecured claim.  The Bankruptcy Code does not require full payment of general unsecured claims in chapter 13 plans.  What is required is that the debtor propose the plan in good faith, that he submit his disposable income to the plan for a period of at least 36 months, and that general unsecured creditors receive, under the plan, at least as much as they would receive if the case were filed under chapter 7.[11]  The debtor's plan satisfies these requirements.  Mr. Woodruff's objection to the plan will therefore be overruled.

Conclusion

---

[10]*See* Order Requiring Proof of Insurance and Adequate Protection Payments, entered Apr. 5, 2005 [Docket No. 36].

[11]11 U.S.C. §§ 1322, 1325.

5

The objections to confirmation filed by Alaska USA and Karl Woodruff are overruled. Alaska USA's Claim No. 1 is disallowed. Alaska USA's Claim No. 16 is bifurcated and will be allowed as a secured claim in the sum of $15,921.32 and as a general unsecured claim in the amount of $6,416.90. The trustee will pay Alaska USA the sum of $1,568.00 as adequate protection. This payment will be credited against the unsecured portion of the Alaska USA's claim, leaving a balance on Alaska USA's general unsecured claim of $4,848.90.

The debtor's chapter 13 plan will be confirmed, as modified to provide for the payment of Alaska USA's claim as discussed in this memorandum. An order will be entered consistent with this memorandum.

DATED: April 29, 2005

BY THE COURT

 /s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve: M. MacDonald, Esq. (for debtor)
W. Dawson, Esq. (for AK USA)
Carl Woodruff, Pro Se Creditor
L. Compton, Trustee
U. S. Trustee
    4/29/05

6